# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MCELROY TRUCK LINES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-01056** |
| | ) | **Judge Aleta A. Trauger** |
| **TERRANCE MOULTRY; LOWE'S** | ) | |
| **HOME CENTERS, LLC; RETAIL** | ) | |
| **DIRECT, LLC; SPOUT, LLC; and ONE** | ) | |
| **RELIABLE HOME SOLUTIONS** | ) | |
| **CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiff McElroy Truck Lines, Inc. ("McElroy") sues to recover for damage to its tractor-trailer and cargo from a crash with a truck driven by defendant Terrance Moultry. According to the Amended Complaint (Doc. No. 47), Moultry was delivering household appliances from defendant Lowe's Home Centers, LLC ("Lowe's"). Lowe's had contracted with defendant Retail Direct, LLC ("Retail Direct")—a broker. Retail Direct had contracted with defendant Spout, LLC ("Spout"). Spout had contracted with defendant One Reliable Home Solutions Corp. ("ORHS") to hire drivers and make deliveries. ORHS hired Moultry. As alleged, Spout and ORHS are out of business. Neither has responded to either the original or Amended Complaint; nor has an attorney appeared on their behalf.

Before the court is Lowe's and Retail Direct's ("moving defendants") joint Motion to Dismiss the two claims against them—Vicarious Liability or Joint Venture (Count II) and Negligent Hiring or Negligent Entrustment (Count III) (Doc. No. 50). Moving defendants have

filed an accompanying Memorandum (Doc. No. 51), to which McElroy has filed a Response (Doc. No. 52), and the moving defendants have filed a joint Reply (Doc. No. 53).

For the reasons set forth herein, the court will deny the motion as to Count II against Lowe's and otherwise grant the motion.

## I.     LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). It is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

2

## II.   FACTS AND PROCEDURAL HISTORY

According to the Amended Complaint, on December 7, 2022, Roby Rozell was driving the plaintiff's tractor-trailer south on Highway 13 in Waverly, Tennessee. (Doc. No. 47 ¶¶ 9–10.) At the same time, Moultry was driving a truck carrying Lowe's freight—some of which originated outside of Tennessee. (*Id.* ¶¶ 9, 15, 17.) This is undisputed. Moultry was heading  east on Tennessee Ridge Road, which intersects Highway 13. (*Id.* ¶¶ 11–12.) Moultry either ignored the stop sign or else proceeded into the intersection when he should not have and crashed into Rozell, causing damage to the plaintiff's tractor-trailer and cargo. (*Id.* ¶¶ 12–13.)

Moultry's truck was part of a fleet that Lowe's had leased from Penske Leasing and Rental Co. ("Penske"), which is not a party. (*Id.* ¶¶ 9, 14.) Lowe's had contracted with Retail Direct—a broker—to manage its shipping. (*Id.* ¶ 19.) Retail Direct had contracted with Spout to transport or arrange transport for Lowe's freight. (*Id.* ¶ 20.) Spout had contracted with ORHS to transport and deliver to Lowe's customers the load in Moultry's truck. (*Id.* ¶ 21.) ORHS hired Moultry. (*Id.* ¶ 22.) McElroy owned the truck Rozell was driving. (*Id.* ¶ 9.)

On October 11, 2023, McElroy sued Moultry, Lowe's, Retail Direct, Spout, and ORHS. (Doc. No. 1.) On May 17, 2024, McElroy filed an Amended Complaint. (Doc. No. 47.) The plaintiff invokes this court's diversity jurisdiction. On the facts as pled—uncontested by the moving defendants—the plaintiff is not a citizen of the same state as any defendant and the amount in controversy exceeds $75,000, so this court has jurisdiction under 28 U.S.C. § 1332. Courts sitting in diversity apply state law, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and there is no dispute that Tennessee's substantive law applies to this case.

McElroy asserts a claim against Moultry for negligence and negligence *per se* for disobeying traffic laws and not exercising due care while driving (Count I) (Doc. No. 47 ¶¶ 33–38); claims against Lowe's, Retail Direct, Spout, and ORHS for vicarious liability or in the

3

alternative joint venture liability (Count II) (*id.* ¶¶ 39–45); claims against Lowe's and Retail Direct for negligent hiring and entrustment (Count III) (*id.* ¶¶ 46–57); claims against Spout for negligent hiring and entrustment (Count IV) (*id.* ¶¶ 58–65); and claims against ORHS for negligent hiring, entrustment, supervision, and training (Count V[1]) (*id.* ¶¶ 66–71). The plaintiff seeks damages and other costs. (*Id.* at 12–13.)

The moving defendants argue that the vicarious liability claim should be dismissed because neither defendant had a principal-agent relationship with Moultry. (Doc. No. 51, at 3–6.) They argue that the alternative joint venture claim should be dismissed because there was no joint venture. (*Id.* at 6–7.) And they argue that the negligence claims should be dismissed because the Federal Aviation Administration Authorization Act of 1994 expressly preempts them, or in the alternative because the plaintiff fails to state a claim. (*Id.* at 7–11.)

## III. DISCUSSION

### A. Vicarious Liability

McElroy asserts that Lowe's and Retail Direct are each vicariously liable for Moultry's negligent driving. Lowe's and Retail Direct move for dismissal of this claim. The plaintiff makes no plausible allegation that either of the moving defendants was in a common law employer-employee relationship with Moultry, nor a principal-agent relationship, nor a joint venture. But the plaintiff does raise a colorable claim for statutory employee vicarious liability as to Lowe's, which Lowe's does not meaningfully address. The court will deny the Motion to Dismiss Count II as to Lowe's and grant the Motion to Dismiss Count II as to Retail Direct.

1. Principal-Agent Relationship

---

[1] The Amended Complaint erroneously refers to the fifth count as "Count III." (Doc. No. 47, at 11.) This court refers to the fifth count—against ORHS for negligence—as "Count V."

*a. Actual Authority*

A principal can be liable for its agent's actions performed on the principal's behalf and within the scope of the agency. *See, e.g.*, *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). Such a relationship can arise without agreement or understanding between the parties. *Id.* (citing *Warren v. Est. of Kirk*, 954 S.W.d 722, 725 (Tenn. 1997)); *see also Zona v. Lincoln Log Homes, Inc.*, 181 F.3d 106 (table), 1999 WL 282666, at *4 (6th Cir. 1999) ("Actual authority can be express or implied." (quoting Restatement (Second) of Agency § 7 cmt. c (1958))). Under Tennessee law, "[t]he existence of an agency relationship is a question of fact under the circumstances of the particular case . . . and is determined by examining the agreement between the parties or the parties' actions." *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008) (internal quotation marks omitted). But a principal is generally not liable for the actions of its independent contractors. *See Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 295 (Tenn. 2011).

To determine whether a principal-agent relationship exists, Tennessee courts consider the following factors: (1) the right to control the conduct of the work; (2) the right of termination; (3) the method of payment; (4) the freedom to select and hire helpers; (5) the furnishing of tools and equipment; (6) the self-scheduling of work hours; and (7) the freedom to render services to other entities. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005) (citing *Bear Co. v. State*, 814 S.W.2d 715, 718 (Tenn. 1991)).

Of these factors, "the right to control the conduct of the agent is the essential test in determining whether an agency relationship exists." *McInturff v. Battle Ground Acad. of Franklin*, No. M2009-00504-COA-R3-CV, 2009 WL 4878614, at *2 (Tenn. Ct. App. Dec. 16, 2009) (citing *Jack Daniel Distillery*, 740 S.W.2d 413, 416 (Tenn. 1987)). What "ultimately matters is the

5

principal's 'control of the means and method' of the agent's work," rather than control over the result. *Merritt v. Mountain Laurel Chalets, Inc.*, 96 F. Supp. 3d 801, 820 (E.D. Tenn. 2015) (quoting *McDonald v. Dunn Constr. Co.*, 185 S.W.2d 517, 520 (Tenn. 1945)). Moreover, "the right of control is not necessarily as important as the principal's exercise of actual control over the agent." *Weeks v. Sands*, No. 20-2709-TMP, 2021 WL 5828043, at *5 (W.D. Tenn. Dec. 8, 2021) (quoting *Bowman v. Benouttas*, 519 S.W.3d 586, 597 (Tenn. Ct. App. 2016)).

As alleged, Lowe's furnished Moultry with a leased truck. (Doc. No. 47 ¶¶ 9, 14, 24.) Lowe's also "provided the customer information, product to be delivered to the customer, delivery instructions, and what was to be hauled away from the customer's house [.]" (*Id.* ¶ 19.) But other than providing delivery instructions (*id.* ¶ 16), there is no allegation that either Lowe's or Retail Direct had control over the *conduct* of the work rather than simply the result. And even if there were, there is no allegation that either Lowe's or Retail Direct had the authority to terminate Moultry; paid him; limited his right to hire helpers or drive for other companies; or scheduled his hours. *Accord Bowman*, 519 S.W.3d at 597–99 (finding no agency relationship between broker and driver).

The plaintiff has not met its burden of alleging facts that show a principal-agency relationship between Moultry and either Lowe's or Retail Direct under Tennessee law. *Accord Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009) (the burden of proving agency is on the "party asserting the agency relationship").

### b. Apparent Authority

"Apparent authority is established through the acts of the principal rather than those of the agent or through the perception of a third party." *Boren*, 251 S.W.3d at 433 (citation omitted). "Apparent authority exists when (1) the principal manifests that another is the principal's agent,

6

and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Black v. SunPath Ltd.*, No. 3:21-cv-00023, 2022 WL 4241270 at *4 (M.D. Tenn. 2022) (quoting *Deschamps v. Bridgestone Ams., Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016)).

McElroy alleges that, because Moultry's truck had Lowe's name and logo on it, Lowe's "represented to the world that the driver . . . was acting as the agent and on behalf of Lowe's." (Doc. No. 47 ¶¶ 29–30.) McElroy says that it "reasonably believed that Moultry was acting as Lowe's agent at the time of the subject incident." (Doc. No. 52, at 4.)

Even if Lowe's had represented that the driver was its agent, to prove apparent authority a person must establish that he "relied on this apparent authority to his . . . detriment." *Acer Landscape Servs., LLC v. Lasiter & Lasiter Inc.*, No. 3:23-cv-00531, 2023 WL 8357958, at *6 (M.D. Tenn. Dec. 1, 2023) (quoting *Boren*, 251 S.W.3d at 432–33). McElroy makes no such allegation, and it is difficult to imagine how it could. This court can draw no reasonable inference from the facts alleged that the defendants are liable under apparent authority.

### 2. Joint Venture

In the alternative, McElroy argues that "the contractual relationship between Defendants Moultry, ORHS, Spout, Retail Direct, and/or Lowe's constitutes a joint venture, making all Defendants jointly and severally liable for the negligent acts and omissions of Defendant Moultry." (Doc. No. 47, ¶ 44.) McElroy argues that the joint venture came into existence because Lowe's and Retail Direct "contracted with each other, and, in turn, Retail Direct contracted with Spout, who then contracted with ORHS for the common purpose of delivering Lowe's products to its customers for a profit." (Doc. No. 52, at 5.) This argument lacks merit.

"A joint venture is similar, but not identical, to a partnership, and has been described by [the Tennessee] Supreme Court as 'something like a partnership, for a more limited period of time, and a more limited purpose.'" *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605–06 (Tenn. Ct. App. 2001) (quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995)). "Unlike a partnership, a joint venture 'is something more or less temporary[.]'" *Weeks*, 2021 WL 5828043, at *7 (quoting *Fain*, 909 S.W.2d at 793).

A joint venture requires: (1) a common purpose; (2) agreement among the parties; and (3) the equal right of each to control the venture. *See, e.g.*, *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 3:13-cv-00260, 2016 WL 2770634, at *3 (M.D. Tenn. May 13, 2016) (citing *King v. Flowmaster, Inc.*, No. W2010–00526–COA–R3CV, 2011 WL 4446992, at *2 (Tenn. Ct. App. Sept. 27, 2011)). The moving defendants argue that, because the plaintiff does not make even a conclusory claim that the five defendants had an equal right to control the venture, this claim should be dismissed. (Doc. No. 51, at 7; Doc. No. 53 at 3.) This court has observed that, even without joint control, a joint venture can arise where there is profit-sharing. *Accord Cool Springs Fin. Grp., LLC v. Albright*, No. 3:19-cv-0964, 2020 WL 2062115, at *9 (M.D. Tenn. Apr. 29, 2020) (citing *Messer Gresheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 471 (Tenn. Ct. App. 2003)). But the plaintiff does not allege profit-sharing, an agreement among all the parties, a common purpose, or an equal right of control. A chain of contracts does not create a joint venture. The facts alleged, accepted as true and viewed in the light most favorable to the plaintiff, do not establish joint venture under Tennessee law.

### 3. Employer-Employee Relationship

The plaintiff does not allege that either of the moving defendants is Moultry's common law employer. Instead, McElroy alleges that Moultry was "an employee of Lowe's within the

meaning of 49 CFR 390.5[T] while driving" the Lowe's delivery truck. (Doc. No. 47, ¶ 18.)
Section 390.5T is the definition section of the Federal Motor Carrier Safety Regulations, 49 C.F.R.
§§ 350–99, which, according to the plaintiff, "apply to the transport of the goods in the vehicle
being driven by Defendant Moultry" because at least one item in the delivery truck "originated
outside . . . Tennessee." (Doc. No. 47, ¶ 17.) Thus, McElroy's argument appears to be that, even
though this court must apply state law under the *Erie* Doctrine, Lowe's' liability for drivers of
trucks it leases is not governed by the traditional common law doctrine of *respondeat superior*,
but rather that Lowe's is vicariously liable as a matter of law under the Regulations for the
negligence of its statutory employee driver.

The Regulations define "employee" as "any individual, other than an employer, who is
employed by an employer and who in the course of his or her employment directly affects
commercial motor vehicle safety." 49 C.F.R. § 390.5T. Independent contractors can be
"employees" under the regulations. *Accord Canal Ins. Co. v. Moore Freight Servs., Inc.*, No. 3:13-
cv-447-TAV-HBG, 2015 WL 3756840, at *5 (E.D. Tenn. June 16, 2015) ("[T]he federal
regulation eliminated the common-law distinction between employees and independent
contract[ors.]"); *Lopez. v. Singh*, No. 1:22-cv-00036 JCH/SCY, 2024 WL 837120, at *3 (D.N.M.
Feb. 28, 2024) (recognizing that the regulations do "not permit motor carriers to classify drivers
as independent contractors to escape liability—independent contractors are squarely covered by
the definition of 'employee[]'").

But while the Regulation's definition may make Moultry *an* employee, the operative
question is whether Lowe's or Retail Direct was *his* "employer." The Regulations define
"employer" as "any person engaged in a business affecting interstate commerce who owns or
leases a commercial motor vehicle in connection with that business, or assigns employees to

9

operate it." 49 C.F.R. 390.5T. Here, Lowe's *had* leased a fleet of commercial vehicles—one of which Moultry was driving at the time of the accident. (Doc. No. 47, ¶¶ 9, 14.)

The moving defendants argue that neither Retail Direct nor Lowe's was Moultry's "employer" because Penske owned the vehicle and ORHS assigned Moultry to it. (Doc. No. 51, at 5.) The defendants skip over part of the definition that they quote: an employer is "any person engaged in a business affecting interstate commerce who owns *or leases* a commercial motor vehicle in connection with that business . . . or assigns employees to operate it." 49 C.F.R. § 390.5T (emphasis added). As alleged, Lowe's leased the truck Moultry was driving, and Moultry was the truck's "permissive user." (Doc. No. 47 ¶¶ 9, 24; Doc. No. 52, at 2.)

While the allegations are scant, this court finds that the Amended Complaint plausibly alleges just enough facts from which it may reasonably be inferred that Lowe's was Moultry's statutory employer. Lowe's does nothing to rebut the plaintiff's argument that is it Moultry's statutory employer as the vehicle's alleged lessee. Therefore, the court will allow the plaintiff's claim of vicarious liability to continue as to Lowe's.

The plaintiff's arguments that defendants are vicariously liable under Tennessee common law, however, are unconvincing, as set forth above. Therefore, the vicarious liability claims as to Retail Direct will be dismissed.

## B.    Negligent Hiring and Negligent Entrustment

The plaintiff alleges that the moving defendants breached their duty of reasonable care to ensure that the companies they hired to deliver merchandise "had adequate levels of financial responsibility, used qualified drivers, maintained appropriate records, [and] complied with the Federal Motor [Carrier] Safety Administration's safety fitness standards." (Doc. No. 47 ¶¶ 48–49.) The plaintiff further alleges that the moving defendants breached their duty to "ensure that the company and driver Spout ultimately entrusted with Lowe's goods was a going concern, had

10

adequate levels of financial responsibility, employed safe drivers, selected companies that employed safe drivers, complied with the Federal Motor Carrier Safety Administration's safety fitness standards, and were capable of safely delivering goods to Lowe's customers in a reasonable and timely manner." (*Id.* ¶ 50.) Based on these allegations, the plaintiff states claims against the moving defendants for negligent hiring and negligent entrustment. The moving defendants argue that the negligence claims are preempted and, in the alternative, that the plaintiff fails to state a claim upon which relief can be granted. (Doc. No. 51, at 8.) Because the court agrees that the claims are preempted, it does not reach the question of whether the Amended Complaint states a claim.

At issue is whether a freight broker and the company that hired it can be liable under state law when the broker's negligent hiring of an unsafe motor carrier, or that carrier's negligent hiring of or entrustment to an unsafe driver, leads to a motor vehicle crash that causes property damage. The Federal Aviation Administration Authorization Act ("FAAA") expressly preempts state laws related to motor carrier and broker prices, routes, and services. 49 U.S.C. § 14501(c)(1). At the same time, its "safety exception" exempts from preemption the state's "safety regulatory authority . . . with respect to motor vehicles." *Id.* § 14501(c)(2)(A). "The Sixth Circuit has not decided whether the FAAAA's preemption clause applies to state law tort claims." *Cox v. Total Quality Logistics, Inc.*, No. 1:22-cv-00026, 2024 WL 2962783, at *5 (S.D. Ohio June 12, 2024), *appeal filed*, No. 24-3599 (6th Cir. July 15, 2024).

1. Background

After Congress deregulated the domestic airline industry by enacting the Airline Deregulation Act of 1978 ("ADA"), Pub. L. No. 95-504, 92 Stat. 1705, it did the same for the trucking industry by enacting the Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793. *See*

*Dan's City Used Cars, Inc.* v. *Pelkey*, 569 U.S. 251, 255–56 (2013). In 1994, Congress enacted the

FAAAA, Pub. L. No. 103-305, 108 Stat. 1569, to further deregulate the trucking industry because

"the regulation of intrastate transportation of property by the States unreasonably burdened free

trade, interstate commerce, and American consumers." *City of Columbus v. Ours Garage &*

*Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002) (quoting Pub. L. 103–305, § 601(a)(1), 108 Stat.

1605)). The FAAAA "preempt[s] state trucking regulation" and avoids "a State's direct

substitution of its own governmental commands for 'competitive market forces' in determining (to

a significant degree) the services that motor carriers will provide." *Rowe v. N.H. Motor Transp.*

*Ass'n*, 552 U.S. 364, 368, 372 (2008) (citations omitted).

The general preemption rule, recodified in its current form under the Interstate Commerce

Commission Termination Act of 1995, provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of
> law related to a price, route, or service of any motor carrier . . . or any motor private carrier,
> broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). There are several exceptions, including the "safety exception." *Id.* §

14501(c)(2)(A). Under this exception, § 14501(c)(1) shall not, in relevant part, "restrict the safety

regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A).

District courts are "sharply divided" about whether the FAAAA preempts state broker

negligence claims. *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1295 (W.D. Okla. 2019); *see also*

*Hawkins v. Milan Express, Inc.*, No. 3:22-CV-51, 2024 WL 2559728, at *5 (E.D. Tenn. May 24,

2024) (noting the division and adding that the issue "remains a close call"); *Moyer v. Simbad, LLC*,

No. 2:20-cv-5405, 2021 WL 1215818, at *7 (S.D. Ohio Jan. 12, 2021) ("[T]here is a genuine split

of authority across the country on this relatively unexplored issue[.]").

The Western District of Louisiana has categorized three ways district courts have decided

this issue. *Bertram v. Progressive Se. Ins. Co.*, No. 2:19-CV-01478, 2021 WL 2955740, at *2 (W.D.

La. July 14, 2021). One group of courts has found no FAAAA preemption of negligence claims against brokers because negligent hiring claims are not "sufficiently 'related to' the services of a broker." *Id.* (collecting cases). A second group has found that negligence claims fall under the preemption provision, but the safety exception exempts them from preemption. *Id.* (collecting cases). A third group of courts has found that negligence claims against brokers are preempted and that the safety exception does not exempt them from preemption. *Id.* (collecting cases). As discussed below, this court is persuaded by the reasoning of this third group.

The three Circuit Courts to address this issue agree that the preemption provision applies, but they are split on whether common law negligence claims against brokers fall within the safety exception. *Compare Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 2021–25 (9th Cir. 2020) (holding that the safety exception applied in a personal injury negligence case stemming from a motor vehicle accident), *cert. denied*, 142 S. Ct. 2866 (2022), *with Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 462 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 564 (2024) (finding that "the connection here—between a broker hiring standard and motor vehicles—is too attenuated to be saved under § 14501(c)(2)(A)" in a survival action), *and Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (holding that, although the plaintiff's claims related to cargo theft implicated an exercise of Florida's safety regulatory authority, that authority was not exercised "with respect to motor vehicles").

2. Questions presented

Do the plaintiff's common law negligence claims fall within § 14501(c)(1)? If so, does § 14501(c)(2)(A)—the safety exception—exempt the claims from preemption? This court agrees with the defendants and the third group of courts referenced above: the plaintiff's claims are preempted by § 14501(c)(1), and the claims do not fall within the safety exception. Even assuming

13

negligence claims against brokers constitute an exercise of Tennessee's safety regulatory authority, that authority is not "with respect to motor vehicles." As a result, the claims are preempted.

It is undisputed that Retail Direct meets the statutory definition of a broker (Doc. No. 51, at 9 (citing Doc. No. 47 ¶ 19)), so this court need not address here whether Retail Direct meets the statutory definition for purposes of the Motion to Dismiss.[2]

3. Analysis

### a. Do the negligence claims fall within § 14501(c)(1)?

The Supremacy Clause[3] prohibits courts from giving effect to state laws that conflict with federal laws. *Accord State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 341–42 (6th Cir. 2008) ("Express preemption exists where either a federal statute or regulation contains explicit language indicating that a specific type of state law is preempted."). This case concerns express preemption. *Accord Cox*, 2024 WL 2962783, at *3.

The FAAAA's preemption language mirrors that of the earlier ADA, and, in interpreting identical provisions in those two statutes, the Supreme Court has held that the FAAAA's preemption must also be read broadly. *Rowe*, 552 U.S. at 370 ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a

---

[2] *C.f.* Interstate Commerce Commission Termination Act, 49 U.S.C. § 13102(2) (a broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation"); *Farfan v. Old Dominion Freight Line, Inc.*, No. 4:23-CV-3470, 2024 WL 3958424, at *2 (S.D. Tex. Aug. 12, 2024) ("The Federal Motor Carrier Safety Administration . . . has reiterated this definition by stating that a broker 'arranges for the transportation of property by a motor carrier for compensation. A broker does not transport the property and does not assume responsibility for the property.'" (quoting *Ragar Transp. v. Lear Corp.*, No. 5:17-CV-52, 2021 WL 4502316, at *8 (S.D. Tex. Sept. 30, 2021)).

[3] U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States which shall be made in Pursuance [of the Constitution] shall be the supreme Law of the Land[.]").

14

new statute indicates . . . the intent to incorporate its judicial interpretations as well."). In applying the ADA preemption standard to the FAAAA, the *Rowe* Court adopted the holding of *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)—that "pre-emption may occur even if a state law's effect on rates, routes, or services 'is only indirect'" and that "pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 370–71 (quoting *Morales*, 504 U.S. at 384–90); *see also Dan's City Used Cars*, 569 U.S. at 260 (interpreting the FAAAA's "related to" provision as preempting state laws "having a connection with or reference to" carrier rates, routes, or services, whether directly or indirectly).

This court embraces the Seventh Circuit's interpretation of *Morales* and *Rowe* as requiring a two-part test for preemption: (1) a state enacts or attempts to enforce a state law; and (2) the law relates to the preemptive provision's prohibitions, either expressly or by having a significant economic effect. *Cf. Cox*, 2024 WL 2962783, at *5.

The first part of the test is easily satisfied. *Accord Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014) ("[S]tate common-law rules fall comfortably within the language of the ADA pre-emption provision" because the preemption provision "applies to state law[s], regulation[s], or other provision[s] having the force and effect of law. . . ."); *see also GlobalTranz*, 74 F.4th at 459 ("[T]he first preemption requirement is easily met."); *Aspen*, 65 F.4th at 1266 ("There is no dispute that [the plaintiff's] state-law negligence claims seek to enforce a 'provision having the force and effect of law' subject to FAAAA preemption.") (quoting *Ginsberg*, 572 U.S. at 281–84); *Miller*, 976 F.3d at 1025 ("As an initial matter, there is no question that common-law claims are within the scope of the preemption clause." (citing *Ginsberg*, 572 U.S. at 284)).

The second part of the test is also satisfied because the plaintiff's claims have a significant effect on brokers. "[B]rokerage services" means "the arranging of transportation or the physical movement of a motor vehicle or of property," 49 C.F.R. § 371.2(c), and "broker" means "a person . . . that as a principal or agent sells, offers to sell, . . . provid[es], or arrang[es] for, transportation by motor carrier for compensation." *Id.* § 13102(2). As mentioned earlier, it is undisputed for purposes of the Motion to Dismiss that Retail Direct is a broker.

Allegations that a broker was negligent in arranging for those services "go to the core of what it means to be a careful broker." *Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *4 (W.D. Tex. Jan. 27, 2020) (quoting *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018)); *see also Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018) ("Further, because the negligent hiring claim seeks to enforce a duty of care related to how Kirsch (the broker) arranged for a motor carrier to transport the shipment (the service), the claim falls squarely within the preemption of the FAAAA."); *Ga. Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017) ("While the services of a freight broker do not include the actual transportation of property, they are focused on arranging how others will transport the property; these services, therefore, fall within the scope of the FAAAA preemption.").

The plaintiff's claims "strike[] at the core" of Retail Direct's "broker services by challenging the adequacy of care the company took—or failed to take" in hiring Spout. *See GlobalTranz*, 74 F.4th at 459; *Aspen*, 65 F.4th at 1267 ("A 'core' part of [a broker's] transportation-preparation service is, of course, selecting the motor carrier who will do the transporting.") (citing *Miller*, 976 F.3d at 1016).

In this case, McElroy alleges that the moving defendants had a duty to "ensure . . . that the companies they selected to deliver goods . . . had adequate levels of financial responsibility, used qualified drivers, maintained appropriate records, [and] complied with [the] Federal Motor [Carrier] Safety Administration's safety fitness standards." (Doc. No. 47 ¶ 48.) McElroy alleges that the moving defendants breached this duty by failing to take reasonable care in selecting Spout to arrange shipping and further breached a duty to take reasonable care to "ensure that the company and driver Spout ultimately entrusted with Lowe's goods was a going concern, had adequate levels of financial responsibility, employed safe drivers, selected companies that employed safe drivers, complied with the Federal Motor Carrier Safety Administration's safety fitness standards, and were capable of safely delivering goods to Lowe's customers in a reasonable and timely manner." (*Id.* ¶¶ 49–50.) McElroy alleges that the defendants owed a duty "to ensure that they entrusted Lowe's delivery vehicles to drivers who were qualified to drive commercial motor vehicles and could do so in a safe manner in compliance with Federal Motor Carrier Safety Regulations" and breached this duty by failing to take reasonable care to ensure that the "ultimate driver" was qualified. (*Id.* ¶¶ 52–53.)

The FAAAA preempts state laws *related to* motor carrier and broker prices, routes, and services. 49 U.S.C. § 14501(c)(1). This court is mindful of the Supreme Court's broad interpretation of "related to" in *Morales*, interpreting the ADA. 504 U.S. at 383–84 ("The ordinary meaning of [related to] is a broad one . . . and the words thus express a broad pre-emptive purpose."); *see also Rowe*, 552 U.S. at 370 (following *Morales*' broad interpretation of "related to" when interpreting the FAAA). The *Rowe* Court wrote that, even if the state law (here, enforcement of common law negligence) "is only indirect," the claim will be preempted unless the connection is too "tenuous, remote, or peripheral." *Rowe*, 552 U.S. at 370 (quoting *Morales*, 504

U.S. at 386). Here, the plaintiff's negligence claims—based on Retail Direct's allegedly negligent selection of a carrier to deliver consumer goods for Lowe's—have a "'connection with or reference to' the service of a broker with respect to the transportation of property." *Aspen*, 65 F.4th at 1267 (quoting *Morales*, 504 U.S. at 384).

The FAAAA preempts the plaintiff's common law negligence claims against Retail Direct, a broker, and Lowe's as well. *Accord Creagan*, 354 F. Supp. 3d at 813 n.6 ("Although Wal-Mart is a shipper rather than a broker, the negligent hiring claim against Wal-Mart stems entirely from Kirsch's broker services [of hiring the motor carrier]. Because the claim against Wal-Mart indirectly attempts to regulate broker services, it must be preempted as well.") (citing *Rowe*, 552 U.S. at 372).

### b. Does the safety exception apply?

The second question is whether § 14501(2)(A)'s safety exception exempts the plaintiff's claims from preemption. This court finds that it does not.

The preemption provision in § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). To fall within the safety exception, therefore, (1) Tennessee's negligence standard must constitute an exercise of "the safety regulatory authority of a State," and (2) the state must exercise that authority "with respect to motor vehicles." *Id.* Because this court finds that common law tort claims are not "with respect to motor vehicles," it does not reach whether such claims fall within the state's "safety regulatory authority."[4]

---

[4] The Seventh Circuit similarly declined to decide this issue. *GlobalTranz*, 74 F.4th at 460. The Ninth and Eleventh Circuits held that negligence claims *do* fall within a state's regulatory authority. *Miller*, 976 F.3d at 1026–29; *Aspen*, 65 F.4th at 1268–70.

While neither the Supreme Court[5] nor the Sixth Circuit[6] has ruled on this issue, the court recognizes that the Ninth Circuit has reached a different conclusion. In *Miller*, a motorist injured in an accident with a semi-tractor trailer sued, among others, the freight broker that arranged for transport of a retailer's goods. 976 F.3d at 1020. The Ninth Circuit held that the safety exception applies to negligent hiring personal injury claims against brokers. *Id.* at 1030–31. In part, the court's decision rested on its interpretation of *Dan's City Used Cars* as finding that the safety exception's "with respect to" is "synonymous" with "relating to." *Id.* at 1030.

This court, however, is persuaded by the reasoning of Judge Fernandez, who dissented from the Ninth Circuit's holding that negligence claims against brokers stemming from motor vehicle accidents are "with respect to motor vehicles." *Miller*, 976 F.3d at 1031–32 (Fernandez, J., concurring in part and dissenting in part). He found that "Miller's claim is not 'with respect to motor vehicles' within the meaning of the exception. Rather, it is with respect to C.H. Robinson's broker services, which are only tangentially 'relat[ed] to' or 'connct[ed] with' motor vehicles." *Id.* at 1301 (citations and footnotes omitted). Similarly, the *Aspen* court concluded that, "[o]f course, every state law that relates to the . . . services of a broker who contracts with a motor carrier . . . will have at least an *indirect* relationship to motor vehicles." 65 F.4th at 1271.

A broker's selection of a carrier is too far removed to be "with respect to motor vehicles" in the meaning of the safety exception. *Accord, e.g.*, *Farfan*, 2024 WL 3958424, at *5 ("At most,

---

[5] The Supreme Court denied petitions for writs of certiorari in *Miller* and *GlobalTranz. See C.H. Robinson Worldwide, Inc. v. Miller*, 142 S. Ct. 2866 (2022) and *Ye v. GlobalTranz Ents., Inc.*, 144 S. Ct. 564 (2024).

[6] The Sixth Circuit's docket, of which this court takes judicial notice, does not indicate that an opinion on this issue will be forthcoming soon. Although *Cox v. Total Quality Logistics, Inc.*, No. 1:22-CV-00026, 2024 WL 2962783, at *5 (S.D. Ohio June 12, 2024), *appeal filed*, No. 24-3599 (6th Cir. July 15, 2024), is docketed, as of the filing of this decision, the case is not even yet fully briefed.

19

Old Dominion's link to motor vehicle safety is several steps removed: Old Dominion brokered the load to Just Van, who in turn hired Anduju as the driver, who in turn drove negligently.").

The Supreme Court has described this safety exception as intended to ensure that FAAAA preemption does "'not restrict' the preexisting and traditional state police power over safety." *Ours Garage*, 536 U.S. at 439 (holding that the safety exception of § 14501(c)(2)(A) preserved local and state safety regulations) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). This court reads the exception narrowly, in accord with the Seventh and Eleven Circuits. *See GlobalTranz*, 74 F.4th at 464 ("Ye's negligent hiring claim against GlobalTranz does not fall within the scope of § 14501(c)(2)'s safety exception."); *Aspen*, 65 F.4th at 1272 ("[N]egligence claims are not 'with respect to motor vehicles' under the FAAAA's safety exception."). This also accords with the Supreme Court's dictate that a statute's text "necessarily contains the best evidence of Congress's pre-emptive intent." *Dan's City Used Cars*, 569 U.S. at 260. Common law broker negligence claims are not "with respect to motor vehicles." This court follows the *Cox* court's lead:

> The scope of the exception is thus narrowed to those laws concerning "motor vehicles," which are defined as a "vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation." 49 U.S.C. § 13102(16) (defining "motor vehicle"). Notably, there is no mention of "brokers" . . . in the safety exception's text, or in Congress's definition of "motor vehicles." *Compare* 49 U.S.C. § 13102(2) (defining "broker"), *with* 49 U.S.C. § 13102(16) (defining "motor vehicle").

*Cox*, 2024 WL 2962783, at *7. As the Seventh Circuit wrote, the phrase "with respect to motor vehicles" "massively limits the scope" of the motor vehicle safety exception, requiring a "direct link between a state's law and motor vehicle safety." *GlobalTranz*, 74 F.4th at 460 (quoting *Dan's City Used Cars*, 569 U.S. at 261–62).

Looking at the structure of the statute yields further evidence for this result. *Accord Loyd*, 416 F. Supp. 3d at 1298–30. As noted above, § 14501(c) specifies several matters reserved for

20

state authority: Subsection (c)(3) exempts from preemption "[s]tate standard transportation practices," including, for example, uniform cargo liability rules and "antitrust immunity for agent-van line operations[.]" 49 U.S.C. § 14501(c)(3)(iii, v). To interpret such a broad reading of "with respect to motor vehicles" in a subsection that otherwise carves out precise exceptions to preemption "would allow the exception to swallow the rule of preemption related to brokers' services." *Loyd*, 416 F. Supp. 3d at 1299. In addition, while "broker" services appears in § 14501(c)(1)'s express preemption provision, it appears neither in the safety exception, § 14501(c)(2) nor elsewhere in in subsection (c)'s other exceptions, *id.*§ 14501(c)(3), (5). *Accord GlobalTranz*, 74 F.4th at 461 ("Congress's inclusion of brokers in one subsection and exclusion in another suggests that the omission was intentional." (citing *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019))).

In 2021, the most recent year for which data are available, large trucks or buses were involved in 5,340 fatal crashes, 119,000 injury crashes, and 412,000 property damage crashes.[7] This court remains concerned by the implications of exempting transportation brokers from negligence claims.[8] But it is nonetheless persuaded by recent authority holding that claims like the ones brought here are preempted and that the safety exception does not apply. For the foregoing

---

[7] Analysis Div., Fed. Motor Carrier Safety Admin., Large Truck and Bus Crash Facts 2021 4–6 tbls.1, 2 & 3 (2023) [https://perma.cc/E9GJ-5N3Z].

[8] *Cf.* Memorandum at 9, *Flexider USA Corp. v. Richmond*, No. 3:19-cv-00764 (M.D. Tenn. Mar. 13, 2020) (Trauger, J.) (noting concern); *accord* Petition for a Writ of Certiorari at 2, *Ye v. GlobalTranz Ents., Inc.*, *Ye v. GlobalTranz Ents., Inc.*, No. 23-475 (Nov. 2, 2023), *cert. denied*, 144 S. Ct. 564 (2024) ("If freight brokers cannot be held accountable for negligently hiring unsafe motor carriers, they will have reduced incentives to ensure that they are not hiring carriers that place unsafe motor vehicles on the road. This reduction in safety will come at the expense of other drivers and their passengers, who are placed at risk of being injured or killed by motor vehicles when brokers negligently hire unsafe motor carriers to provide motor vehicle transportation.").

21

reasons, the FAAA's safety exception does not apply and, therefore, the plaintiff's common law property damage negligence claims are preempted.

## IV.      CONCLUSION

Defendant's Motion will be denied as to Count II against Lowe's and granted otherwise. An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge